## Bredbenner et al. v. Miller et al.

*Thomas J. Evans*, for petitioners.
*Harriet E. Bailey*, county solicitor, for defendant.

KREISHER, P. J., October 24, 1952.—The above-captioned matter comes before the court on a petition signed by 10 qualified electors of Main Township requesting a change of the polling place in that township. The action is brought against the Commissioners of Columbia County and is in the nature of an appeal

from the action of the commissioners in refusing to change the polling place.

A hearing was held on the petition, at which time many of petitioners appeared and testified respecting their reasons for the requested change, and at the same time members of the election board testified, stating that it was immaterial to them, and also some of the opponents to the change testified, especially the owner of the premises where the polling place is now located. He testified that sometime prior to the presentation of the petition to the commissioners for the change in the polling place he requested the chief clerk of the county commissioners that the polling place be changed, but upon learning that a petition to effect the change was being circulated, he then opposed the change and desired to retain the polling place in his premises, giving as his reason therefor that the petition was circulated out of peronal animosity, and that the same contained the allegation that the present polling place was dirty, and he desired it to be understood that his premises were not dirty.

Without going into the merits of the case, which is another classic example wherein the court is always wrong irrespective of the conclusion, it is necessary to examine the Election Code to determine the procedure and the jurisdiction. The Election Code was codified by the legislature on June 3, 1937, P. L. 1333, and article V, sec. 526, 25 PS §2726, provides:

"(a) The county board of elections shall select and fix the polling place within each new election district and may, at any time, for any reason that may seem proper to it, either on its own motion or on petition of ten qualified registered electors of an election district, change the polling place within any election district. . . ."

The act further provides under section 527 (a) :

"In selecting polling places, the county board of elec-

tions shall, wherever possible and practicable, select schoolhouses, municipal buildings or rooms, or other public buildings for that purpose. Any board of public education or school directors, or county or the municipal authorities shall, upon request of the county board, make arrangements for the use of school property, or of county or municipal property for polling places: Provided, however, That such use shall not interfere with the use of such buildings for the purposes for which they are primarily intended. . . .

Section 531 provides:

"The county board of elections shall fix the compensation for rent, heat, light and janitorial services to be paid for the use of polling places for primaries and elections: Provided, however, That no compensation for rent, heat or light shall be paid in the case of schoolhouses, firehouses, municipal buildings or rooms, or other public buildings used as polling places."

An examination of the Election Code with respect to the selection of polling places reveals no other provisions and, therefore, it follows that the selection of polling places is vested in the county board and not in the courts, and therefore, we conclude that the court is without jurisdiction to grant the relief prayed for by petitioners.

Prior to the codification of the Election Code in 1937 the enactments with respect to the selection of the polling places were set forth in practically the same language as was used in the Act of 1937 above quoted, and there are innumerable decisions under the old act to the effect that the court is without jurisdiction to entertain a petition for the change of a polling place: See In re Polling Place, 72 Pitts. L. J., 737, and the cases therein cited. In the case of In re Special Registration of Electors, reported in 27 Erie 65, it is stated by Evans, J., on page 67 of the opinion as follows:

"We feel that the selection of polling places and

registration places is a matter to be determined by the commission and that their discretion with reference thereto should not be disturbed unless definitely abused."

It appears in the above-captioned case that the controversy in question has arisen by reason of the clash of personalities within the election district, and that the action of the county board in first taking action to change the polling place as requested by petitioners and then revoking that action by a full board in refusing to change the polling place, has developed into a political conflict, and we feel it is our duty to pass upon this question strictly in accordance with the act of assembly without taking into account personalities or politics. We do point out that the county board could save the county the rent that it is paying for the present premises by changing the polling place. By the same token the school board would not receive any compensation for the use of its building.

We do not believe it is our duty or our right to pass upon the question of which polling place would be the best for the electorate and, therefore, we do not deem it necessary to comment upon the various arguments pro and con as advanced by the opposing parties. The selection of a polling place is purely statutory, and from our examination of the Election Code we can find no authority whatsoever granted to the court to make this selection. There are in the code many provisions for appeals to the court from decisions of the county board, and we believe if the legislature intended an appeal to lie from the selection of a polling place, the legislature would have so provided. To cite one example where the legislature provided for an appeal to the court from the action of the county board was the Act of 1937, P. L. 487, sec. 23, 25 PS §951-23, and section 41 which provides for appeals to the court if

any person whose claim for registration as an elector has been denied by the registration commission.

The Act of May 18, 1893, P. L. 106, empowered the court of quarter sessions to change the polling places in election districts on petition of at least 10 qualified electors of the district. However, this act was repealed by the Act of April 14, 1903, P.L. 187, which authorized the county commisioners to change the polling places. The act is brief and we quote it for comparison with the above-quoted Act of 1937:

"That it shall be lawful for the County Commissioners of any county of this Commonwealth, at any time at least three weeks prior to any general, municipal, township or special election, for any reason that may seem proper to the County Commissioners, upon a petition of at least ten qualified electors of any township election division, to change the polling place of said township or election division: Provided, however, That the said County Commissioners may, in their discretion, direct that an election be held to settle the question as to where the said polling-place shall be located."

The Act of July 8, 1919, P. L. 769, amended the above-quoted Act of 1903 in the following language:

"That it shall be lawful for the County Commissioners of any county of this Commonwealth, at any time at least three weeks prior to any general, municipal, township, or special election, for any reason that may seem proper to the County Commissioners, upon a petition of at least ten qualified electors of any township or election division, and after written notice to the occupant or owner of said polling-place, at least one week before the hearing on said petition, to change the polling-place of said township or election division: Provided, however, That upon the presentation of a petition to the County Commissioners, on or before the day of hearing of said petition for the change, signed

by a majority of the registered electors of the said township or election division, and sworn to by one of the qualified electors thereof, objecting to such change of the polling-place, said County Commissioners shall not make any change in the said polling-place of said township or election division. And provided further: That the said County Commissioners may, in their discretion, direct that an election be held to settle the question as to where the said polling-place shall be located."

The Act of 1937 above quoted, amending and repealing the Acts of 1903 and 1919, fails to contain the provision with respect to placing the question upon the ballot to settle the question where the polling place shall be located, and it fails to contain the provision permitting a majority of the electors to present a petition in objection to the change of the polling place. However, the remaining portions of the act are practically the same, placing the authority for changing the polling place in the county commissioners or county board of elections, and it was held under the Act of 1903 and the Act of 1919 that the authority for changing polling places is purely statutory, that the Act of 1893 vesting this power in the court of quarter sessions was repealed by the Act of 1903, and that the Acts of 1903 and 1919 vested authority to change polling places in the county commissioners and not in the court. Therefore, it follows that under the Act of 1937 the authority to change polling places is still vested in the county board of elections and not in the court, and as stated by Carpenter, J., in the Pittsburgh case above cited: "Jurisdiction being fundamental, it is the duty of the Court sua sponte to quash this proceeding."

It is likewise our duty under the law as we believe it exists today to quash the proceedings, and to this end we make the following

## Order

And now, to wit, October 24, 1952, the prayer of the petition as filed is denied, the proceedings are quashed, and the costs are placed upon Columbia County.